## BLAKE *v.* FERRIS *et al.*

### *Negligence.—Master and Servant.—Respondeat superior.*

If persons, licensed to construct a sewer in a public street, engage another to do the work, for a stipulated sum, they are not liable to a third person, for an injury resulting from the negligence of the servants of the contractor ; the rule *respondeat superior* only applies to the immediate employer of such servants.

A provision in the license, that the party shall cause proper guards and lights to be placed at the excavation, for the prevention of accidents, does not enlarge the responsibility of the licensees to third persons, to whom they would not otherwise be liable.

\* 49 ] \*APPEAL from the general term of the Superior Court of the city of New York, where judgment had been entered upon a verdict in favor of the plaintiff.

This was an action to recover damages for an injury done to the plaintiff's horses and carriage, by being driven into an open unfinished sewer, which the defendants had permission to construct, in Twelfth street, in the city of New York, in consequence, as was alleged, of the negligence of the defendants, and their servants.

The defendants applied to the city authorities for permission to construct a sewer in Twelfth street, at their own expense, under the direction of the street commissioner. Such permission was granted, on the 4th January 1848, with directions as to the size of the sewer, the mode of its construction, and the materials to be used. It contained a provision that the "grantees should cause proper guards and lights to be placed at the excavation of the drain, for the prevention of accidents, and' be answerable for any damages or injuries which might be be occasioned to persons, animals or property, in any manner connected with the construction of the sewer."

*The street commissioner appointed one Horace Butler, inspector of the work; and the latter entered into a contract with one John Gibbons, who agreed to furnish all the materials for, and to build the sewer in question, according to the specifications; and Butler, on his part, agreed to pay certain specified prices for the several kinds of work necessary to complete the job.

On the 14th January 1848, after some progress had been made in the work, the plaintiff's horses and carriage were driven into the unfinished sewer in the night-time, which had been left open and unguarded, without any negligence or fault on his part, or that of his servants. At the time of the accident, Gibbons and his men were engaged in excavating the sewer; he was not acquainted with the defendants, never received any instructions from them, but knew Butler only in the transaction.

At the close of the evidence, the defendants' counsel requested the court to charge the jury, "that if the defendants did not contract for the work, or if the contractor was exercising an independent employment, and the defendants did not interfere with the work, they were not liable. That if there was an implied permission by the defendants, which constituted an employment, the express acts of the city authorities had the like effect, and made the city the employer paramount." This was refused, and an exception taken.

*The learned judge (OAKLEY, C. J.) then instructed the jury, "that if they were satisfied, [ * 51 from the evidence, that the sewer was undertaken by the defendants, and for their benefit, and that Horace Butler, *in making the contract for building the sewer*, and in building it, acted as the agent of the defendants, then the defendants were responsible for whatever damages might have resulted from the want of due care."

There was a verdict for the plaintiff, under this in-

struction for $150 damages; and the court, at general term, having denied a motion for a new trial, made on a bill of exceptions, and entered judgment for the plaintiff upon the verdict, the defendants took this appeal.

*Sandford,* for the appellants.

*Davis,* for the respondent.

MULLETT, J.—It is quite clear, that the building of the sewer in question was not a city improvement, carried on by the city officers, as a public work. The defendants applied to the city authorities for permission to construct the sewer, at their own expense, but under the direction of the street commissioner. As the construction of the work had a tendency to disturb the then existing sewers and pavements of the city, it was proper, that it should be executed under the inspection of the city officers, and this is a sufficient reason for their reserving and exercising a supervision over it, but not sufficient to make the city a principal in building the sewer.[1] Whether the city owned the land occupied by the street, or only the right of way over it, and the improvements upon the land, it was necessary for the defendants to get permission from the city to build their sewer in the street, and it was not denied, that such permission gave them a lawful right to do so, so far as the corporation was concerned; nor was it, or could it be, claimed that the provisions contained in the permission requiring the defendants to cause proper guards and lights to be placed at the excavation, for the prevention of accidents, and to be answerable for all damages and injuries which might be occasioned to persons, animals or property, in any manner *connected with the construction of the sewer, however beneficial it might be to the

* 52 ]

[1] See Erie *v.* Caulkins, 85 Penn. St. 247.

city, did or could inure to the benefit of the plaintiff in this action, or strengthen his right to recover against these defendants.

For the purpose of considering the question before us, the defendants may, therefore, be regarded as the persons, at whose expense, and for whose benefit, the sewer in question was to be constructed, having a lawful right to construct it themselves, or by their agents or servants, being responsible to third persons for all injuries occasioned by the negligent or improper manner in which they exercised that right, or the right to let by contract the execution of the whole work to some other person, who, as to the *right to make the sewer*, might be considered the representative of the defendants, and be protected by the permission given to them. This case shows that the defendants adopted the latter course, and either by themselves or by their agent, contracted with Gibbons to furnish the materials for, and build the sewer, in every respect according to the specifications of the street commissioner, that is to say, to construct such a sewer as the defendants were permitted to construct. That while Gibbons and his men were engaged in the execution of this contract, his men or servants, in his absence, without his knowledge, and in disregard of his directions, were guilty of the negligence which was the cause of the injury to the plaintiff's horses and carriage.

Upon the close of the evidence tending to establish this state of facts, the counsel for the defendant requested his honor, the judge, to charge the jury, in substance: That if the contractor, who was engaged in constructing the sewer, when the accident happened, was exercising an independent employment, and the defendants did not interfere with the work, they were not liable. If the proposition contained in the request was a legal one, and was fairly presented by the case, the defendants were entitled to the instruction prayed for, and it was error to refuse it. The learned judge not only refused

to give the desired instruction, but in his charge, which followed the refusal, seems to have *negatived the principle sought to be recognised, by telling the jury, in effect, that if they were satisfied from the evidence, that the sewer was undertaken by the defendants, and for their benefit, and that Horace Butler, in making the contract with Gibbons for building it, acted as their agent, the defendants were responsible for whatever damages might have resulted from the want of due care in the execution of the work. I know the charge was not excepted to, and I have not referred to it, as erroneous, but for the purpose of showing that the error, if there was any, in the refusal to charge as requested, was not corrected by the charge. By refusing to charge, as requested, the learned judge permitted the cause to go to the jury, upon the principle, that the person who undertakes the erection of a building, or other work, for his own benefit, is responsible for injuries to third persons, occasioned by the negligence of the servants of the builder, or the person who is actually engaged in executing the whole work, under an independent employment, or a general contract for that purpose.

This presents a legal question of great practical importance, and is the only one raised by the bill of exceptions, or discussed upon the argument in this court, which requires to be considered in deciding this case. The refusal of the learned judge to charge as requested, is attempted to be sustained, partly, if not principally, by the maxim, *qui facit per alium facit per se,* and the consequential rule of *respondeat superior.* The rule of *respondeat superior* is simple and easily understood, but it must be confessed, that its application in the reported cases has produced some diversity of opinion among learned judges. It will, however, upon examination, be seen, that this diversity did not arise out of any intricacy or uncertainty in the rule, or any doubt of its correctness, but has been occasioned by the variety and intricacy

of the facts to which it has been applied, and the diffi‑ culty in ascertaining whether or not the relation, to which the rule is applicable, existed in the cases under consideration.   WILLIAMS, J., in the case of *Milligan* v. *Wedge* (12 Ad. & E. 737), *says, "the difficulty always is, to say whose servant the person is that [ * 54 does the injury; when you decide that, the question is solved."

The rule of *respondeat superior*, as its terms imply, belongs to the relation of superior and subordinate, and is applicable to that relation, wherever it exists, whether between principal and agent, or master and servant, and to the subjects to which that relation extends, and is co‑ extensive with it, and ceases, when the relation itself ceases to exist.[2]   It is founded on the power which the superior has a right to exercise, and which, for the pre‑ vention of injuries to third persons, he is bound to exer‑ cise, over the acts of his subordinates.   Therefore, the rule cannot be applicable to cases where no such power exists.   The absolute and direct coincidence and co‑ existence of the rule *respondeat superior* with the relation to which it is applicable, and to the subject-matter to which that relation extends, is an important proposition in determining the applicability of the rule, and may be illustrated by the following cases:

The case of *Laugher* v. *Pointer* (5 B. & C. 560) was an action to recover damages for an injury done to a horse of the plaintiff, by the negligence of another person, under the following circumstances: The defendant owned a carriage, and hired of a stable-keeper a pair of horses and a driver, to draw it for a day, or a short time. The injury was done through carelessness of the driver,

[2] To render a person liable for the negligence of another, the relation of master and servant, or of principal and agent, must exist between them. Stevens v. Armstrong, 6 N. Y. 435 ; Pack v. New York, 8 Ibid. 222 ; Mc‑ Cafferty v. Spuyten Duyvil and Port Morris Railroad Co., 61 Ibid. 178 ; Allen v. Willard, 57 Penn. St. 374 ; Reed v. Allegheny City, 79 Ibid. 300 ; McGuire v. Grant, 1 Dutch. 356.

in driving, while the defendant was riding in the carriage. The plaintiff brought his action against the owner of the carriage. The judge before whom the cause was tried nonsuited the plaintiff; a strong attempt was made for a new trial, both in the king's bench and exchequer chamber, which failed, on account of the disagreement among the judges in both courts, as to the question whose servant the driver was, that did the injury, whether in the act of driving, he was the servant of the defendant, who was riding in the carriage, or of the stable-keeper, who sent him with the horses to draw it.

In the case of *Milligan* v. *Wedge* (12 Ad. & E. 737), the rule of *respondeat superior* was again brought before the court, upon *the following facts: The defendant, \* 55 ] who was a butcher, had bought a bullock, at Smithfield market, which is within the city of London, where those who drive cattle for others are required to be licensed. The butcher employed a licensed drover, to drive the bullock to the slaughter-house, which was without the bounds of the city; the drover employed a boy to drive the ox, who conducted so negligently in the business, that he permitted the ox, as he was passing by the plaintiff's show-room, in which he had marble chimney-pieces, &c., for sale, to run into the show-room and break the chimney-pieces, for which injury the plaintiff sued the butcher. The judge before whom the cause was tried, was of opinion, that the boy was not the defendant's servant, and a verdict was given for the defendant; an attempt was made to set aside the verdict, which was unanimously denied, on the ground that the boy was not the defendant's servant.[3] Upon this occasion, WILLIAMS, J., made the remark above quoted, and

[3] A licensed carman, who carries on business on his own account, does not stand in the relation of servant, to one who employs him, so as to render the latter liable for the negligence of the servants of such carman. M'Mullin *v.* Hoyt, 2 Daly 271.

COLERIDGE, J., said, " the true test is, to ascertain the relation between the party charged, and the party actually doing the injury. Unless the relation of master and servant exists between them, the act of one creates no liability in the other."

The case of *Quarman* v. *Burnett and others* (6 M. & W. 499), was similar in its facts to the case of *Laugher* v. *Pointer*. The defendants owned a carriage, and hired a pair of horses and driver from another person, to draw the carriage for a short time, during which, an injury was done to the plaintiff's horse and chaise, by the carelessness of the driver, for which the owner of the horse and chaise brought his action against the defendants. The defendants pleaded, first, not guilty ; secondly, that the carriage and horses, or either of them, were not under the care of the defendants. Upon the trial, the jury found a verdict for the plaintiff, and the judge reserved liberty to move to enter a nonsuit. On the decision of this motion, PARK, B., delivered the opinion of the court, which was, that the defendants were not liable, and that a rule be made absolute to enter a verdict for them. In delivering *the opinion of the court, the learned baron says, that " upon the [ * 56 principle that, *qui facit per alium facit per se*, the master is responsible for the acts of his servant ; and that person is undoubtedly liable, who stands in the relation of master to the wrongdoer ; he who had selected him as his servant, from the knowledge of, or belief in, his skill, and care, and who could remove him for misconduct, and whose orders he was bound to receive and obey. But the liability, by virtue of the relation of master and servant, must cease, when the relation itself ceases to exist ; and no other person than the master of such servant can be liable, on the simple ground, that the servant is the servant of another, and his act the act of another." The decision is approved of, and the same principles recognised in the cases of *Rapson* v. *Cubitt* (9

M. & W. 709), and *Hobitt* v. *Northwestern Railway Company* (4 Exch. 254); and the doctrine of these cases adopted by Mr. Justice STORY in his commentaries on the law of agency, 2d ed., § 453, b.

Another condition to be regarded in the application of the rule of *respondeat superior* is, that there can be but one responsible superior for the same subordinate, at the same time, and in respect to the same transaction. LITTLEDALE, J., in the case of *Laugher* v. *Pointer*, puts his opinion, that the owner of the carriage was not liable for the injury done to a third person, by the negligent driving of the servant of the stable-keeper who sent his horses and driver to draw the carriage, for a short time, on the ground, that the driver could not be the servant of both, the livery-stable keeper and the person riding in the carriage.[4] His honor remarks, that he "was the servant of one *or* the other, but not the servant of one *and* the other; that the law did not recognise a several liability in two principals." That the action must be brought either against the principal, or person who committed the injury.

\* 57 ]　　*The propositions, that the rule of *respondeat superior* is applicable only to the immediate superior of the person who does the injury, and that there can be but one such responsible superior, are clearly adopted by the English court of exchequer, in the recent case of *Reedie* v. *Northwestern Railway Company* (4 Exch. 244). In this case, the railway company had let out, by contract, the building of a viaduct, which was a part of their railway, to contractors; through the negligence of the men employed by the constructors, a stone fell on a man, who was passing under the viaduct, and killed him. For this injury, an action was brought

---

[4] The immediate employer of the agent or servant, who causes an injury, is alone responsible for it; to him alone the rule *respondeat superior* applies. Wray v. Evans, 80 Penn. St. 102. The true test of liability in such cases is, who had the power to discharge the servant. Michael v. Stanton, 3 Hun 462.

by his representatives against the railway company, and it was held that the company were not liable. ROLFE, B., in delivering the opinion on the branch of the case involving the above principle, says, " the liability of any one, other than the party actually guilty of any wrongful act, proceeds on the maxim, *qui facit per alium facit per se.* The party employing has the selection of the party employed, and it is reasonable, that he who has made choice of an unskilful or careless person to execute his orders, should be responsible for any injury resulting from the want of skill, or want of care, in the person employed; but neither the principle of the rule, nor the rule itself, can apply to a case, where the party sought to be charged does not stand in the character of employer to the party by whose negligence the injury has been occasioned." And he refers to the cases of *Quarman* v. *Burnett, Rapson* v. *Cubitt, Milligan* v. *Wedge*, and *Allen* v. *Haywood* (7 Q. B. 960), as settling this principle. And the same learned Baron, in recognition of the principle laid down by LITTLEDALE, J., remarked, in substance, that to decide that the railway company was liable, would be equivalent to deciding that the contractors, whose servant *did the injury, were not liable, which was a proposition which could not  [ * 58 be maintained.[5]

All the above cases are cited with approbation by Mr. Justice STORY, in his commentary on agency § 453 a, b and c; and in § 454 a, he alludes to a distinction, which, if properly considered, will have a tendency to simplify this and all similar inquiries. He says, nice questions have arisen as to when, and under what circumstances, the parties employed are to be deemed servants or subagents of the principal employer, and when only the sub-agents of the immediate person by whom they are actually employed. In the first case the principal employer is liable, and in the latter not.

[5] And see Wray v. Evans, 80 Penn. St. 102

This distinction was alluded to by LITTLEDALE, J., in the case of *Laugher* v. *Pointer*, and PARK, B., in the case of *Quarman* v. *Burnett*. The first class of cases embraces those where the men or servants, though actually employed by a third person, are employed for, in the name of, and at the expense of, the primary principal, and are continued subject to his control, as seamen employed by a master of a vessel, servants hired by a steward, laborers hired to work on a farm by a general superintendent, and workmen to work in a manufactory by a managing agent; in all which, and similar cases, the person who employed the men is himself an agent for that purpose, and he, as well as the men whom he employed, are paid by the general principal, and subject to his control. In such cases, they are the agents or servants of the general principal, and he is their responsible superior. But when a man is employed in doing a job, or piece of work, with his own means, and his own men, and employs others to help him, or to execute the work for him, and under his control, he is the superior who is responsible for their conduct, no matter whom he is doing the work for. To attempt to make the primary principal or employer responsible in such cases, would be an attempt to push the doctrine of *respondeat superior* beyond the reason on which it is founded.

The defendants' liability in this action being so absolutely *dependent upon the fact, that they occupied the position of superior of the persons whose negligence or misconduct occasioned the injury, and had the powers which belonged to that position, we may now inquire, what evidence there was in the case to establish that fact. There, certainly, was none on the part of the plaintiff, except the inference or presumption arising from the circumstance that they obtained permission to make the sewer, or that it was being constructed for their benefit. To destroy this inference, and to show that the relation of superior and subordinate did *not*

exist between the defendants and the persons whose negligence or misconduct occasioned the injury, the defendants proved that Gibbons was constructing the sewer, under a contract with Horace Butler, by which he bound himself to Butler to furnish the materials and to do the whole work, for a specified compensation. If Butler did not make that contract, on behalf of and as the agent of the defendants, it would create no relation whatever between Gibbons and the defendants. If he did make the contract as the agent of the defendants, then the case would present the question, whether the contract created the relation of superior and subordinate between the defendants and Gibbons, in respect to those acts which belong to the practical execution of the work, or the employing of men to execute it, which was, in substance, the question which the learned judge was requested to decide for the jury, and upon the decision of which their verdict might have depended. It is claimed, on the part of the appellants, in substance, that when a person is engaged in doing a job, or piece of work, under an employment or contract which leaves to him the independent use of his own skill, judgment, means and servants, in the execution of it, he is not the agent or servant of the general employer; that the relation between them is governed by the contract, or by the nature of the employment.

The decision in the case of *Milligan* v. *Wedge* was put upon the ground, that the butcher employed a person who was recognised by law as exercising a distinct calling, to *drive the ox, whose servant did the mischief. In the case of *Rapson* v. *Cubitt* (9 M. & [ * 60 W. 70), the defendant, Cubitt, who was a builder, was employed to execute certain alterations in a house, including the propositions for and the fixing of gas-fittings; he made a contract with Bland, a gas-fitter, to execute that part of the work; in the course of doing it, through Bland's negligence, the gas exploded and injured the

plaintiff, a third person, who brought his action for the injury, against Cubitt, on the ground that Bland was his servant; but the court, consisting of Lord ABINGER, C. B., and PARK, ALDERSON and ROLFE, BB., were unanimous in the opinion, that Bland did not stand in the relation of servant of Cubitt, but was merely a sub-contractor.

PARK, B., in delivering the opinion in the case of *Quarman* v. *Burnett*, after laying down the doctrine, that the liability by virtue of the relation of master and servant must cease, when the relation itself ceases to exist; that no other person than the master of the servant can be liable, on the simple ground that the servant is the servant of another, and his acts the acts of another, proceeds, in effect, to deny that when one person enters into a contract with another, which does not raise the relation of master and servant between them, the employer is liable for the negligence of the contractor's servants, and remarks, in substance, that such a doctrine would render the employer liable, not only for the acts of his own servants, but for injuries which arise from the acts of another person, in carrying into execution that which the contractor had agreed to do for his benefit, and concludes by remarking, "this is too large a position, and cannot be maintained to its full extent, without overturning some decisions, and producing consequences which would" (as Lord TENTERDEN observes) "shock the common sense of all men." The learned judge then proceeds to give some illustrations of the absurd consequences of such a doctrine as that which he was repelling, which clearly show the applicability of the principle mentioned by him, to the question now under consideration, and the concurrence of his *opinion with the proposition put forth by the appellants.

\* 61 ]

The impracticability and injustice of the construction of the rule of *respondeat superior*, contended for by the plaintiff below, may be further illustrated, by the supposition of a very common case in this country, that of a

man, who is about to build a house for himself. He
may, if he please, superintend and manage the whole,
from its commencement to its completion, employ men,
give directions in reference to every part of the work,
which his men would be bound to follow, and thus make
himself the master in fact of all the persons employed;
but as Baron PARK said about the butcher's driving the
ox, he is not bound to do so, and he may not know how
to do it. He may, therefore, let out, by contract, the
building of the house to some person who will undertake
to furnish all the materials and complete the building in
a specified manner, and for a stipulated compensation.
Would he thereby become the master of all the contrac-
tor's appurtenances, servants and men employed by him,
and render himself liable for all the injuries to third
persons, which might be occasioned by their negligence
or misconduct in doing any act tending to the construc-
tion of the house? For instance, by the carpenter's
men, in getting out timber in the forest; by the stone-
cutter's servants, in blasting stone in the quarry, or by
the teamsters in handling materials; such consequences
would indeed shock the common sense of all men. The
truth is, such a contract does not constitute the contrac-
tor the agent or servant of the employer, nor authorize
him to pledge the responsibility of the employer for the
conduct of servants, nor for anything to be done in the
execution of his contract.[6] The proposition, therefore,
contained in the request of the defendants' counsel to
the judge, was sound, and if properly presented by the
case, was erroneously overruled.

But the respondent's counsel, on the argument in this
court, attempted to obviate the force of the appellants'
point, raised on his exception, by setting up the princi-
ple, that where the injury is occasioned by the negligence
or misconduct of a *person while transacting [* 62
any business connected with the improvement,

[6] Hunt *v.* Pennsylvania Railroad Co., 51 Penn. St. 475.

use or enjoyment of real property, the owner of the property is liable, whether the wrongdoer is working for wages, or under a contract, or in other words, whether he was the owner's servant, or was executing an independent employment. If this proposition was sound law, and applicable to this case, it might render the question contained in the request to charge irrelevant, and justify the learned judge in refusing to decide it. I will not, on this occasion, stop to inquire, how this principle was raised on the trial of this cause, whether there was any proof that the defendant owned or had any interest in real estate, or that there was any connection between the sewer and the houses that were building on Twelfth street.

The proposition assumed by the respondent's counsel is confessedly founded on the case of *Bush* v. *Steinman* (1 Bos. & Pul. 404), which was an action on the case against the defendant, for causing a quantity of lime to be placed on the highway, by means of which the plaintiff and his wife, who were riding in a chaise, were overturned and much hurt, and the chaise considerably injured. The facts of the case were these: The defendant, having purchased a house by the road-side (but which he had never occupied), contracted with a surveyor to put it in repair for a stipulated sum. A carpenter, having a contract under the surveyor to do the whole business, employed a bricklayer under him, and he contracted for a quantity of lime, with a lime-burner, by whose servant the lime in question was laid in the road. On the trial, there was a verdict for the plaintiff, with liberty for the defendant to move to have a nonsuit entered. The motion was made before EYRE, C. J., and HEATH and ROOK, JJ., and denied, as it was said, with concurrence of Mr. Justice BULLER, though the learned judge who delivered the opinion acknowledged that he was unable to give a satisfactory reason for it, and thus

the principle advanced by the respondent was adopted in that case.

The decision in *Bush* v. *Steinman* was followed by Lord ELLENBOROUGH *at *nisi prius*, in the case of *Sly* v. *Edgeley* (6 Esp. Rep. 6); but it is believed, it has never received the sanction of any English court. In the case of *Laugher* v. *Pointer*, heretofore referred to, the authority of that decision in reference to the case before the court, was denied, and the correctness of the principle on which it was founded, doubted by LITTLE-DALE, J. It was noted by PARK, B., in the case of *Quarman* v. *Burnett*, and again in the case of *Rapson* v. *Cubitt*, as not being applicable to those cases, with a remark, that it might be applicable to injuries occasioned by the negligent management of fixed real property, with some attempted explanation of the difference between the two classes of cases.

[ * 63

But in the case of *Reedie* v. *Northwestern Railway Company*, hereinbefore cited, the case of *Bush* v. *Steinman* was brought directly before the court of exchequer, under circumstances calling for a recognition or denial of the principle on which it was decided. In this case, the facts of which have already been stated, a verdict had been taken for the plaintiff, with liberty to the defendants to move for a nonsuit. On the argument of the motion, the counsel for the plaintiff insisted that the law, as settled in the cases of *Quarman* v. *Burnett, Rapson* v. *Cubitt, Milligan* v. *Wedge*, and other concurring cases, was not applicable to the case under consideration. That there was a recognised distinction on the subject, between injuries arising from the careless or unskilful management of an animal or other personal chattel, and injuries resulting from the negligent management of fixed real property. That as the injury in the case under consideration was occasioned by persons at work on the defendants' railway, of which they were the owners, they were responsible; and to sustain this propo-

sition, referred to the case of *Bush* v. *Steinman.* Baron
ROLFE, in delivering the opinion of the court, after
alluding to the distinction set up, and the authority cited
to support it, said—"*but on full consideration, we have come
to the conclusion that there is no such distinction, unless per-
haps in cases where the act complained of is such \*as
to amount to a nuisance; and, in fact, according to
the modern decisions,* Bush v. Steinman *must be taken not to
be law, or, at all events, that it cannot be supported on the
ground on which the judgment of the court proceeded.*"   And
in his further remarks, the learned Baron says—"this
doctrine" (meaning the doctrine of *respondeat superior*)
"is one of general application, irrespective of the nature
of the employment, and applying the principle to the
present case, it would be impossible to hold the present
defendants liable, without, at the same time, deciding
that the contractors are not liable, which it would be
impossible to contend."   Baron PARK concurred in this
decision, and a nonsuit was ordered.[7]

   It is believed, that the principle asserted in the case of
*Bush* v. *Steinman,* to its full extent, as claimed by the
respondent, has never been adopted in this state.   It
was not so adopted in the case of *Bailey* v. *Mayor of New
York,* referred to by the respondent, either by the supreme
court, or by the court for the correction of errors.   In
the supreme court (3 Hill 531), the principle insisted on
by the counsel here, was not mentioned by the learned
judge who delivered the opinion.   In the court for the
correction of errors (2 Denio 434), Chancellor WALWORTH
referred to the case of *Bush* v. *Steinman,* and may be con-
sidered as adopting it in the limited and restricted sense
to which it had been reduced by the English courts, to
cases where the injury complained of has been occa-

---

[7] The rule that an owner of real estate is subjected to liability for any
injury, resulting from negligence, done in the performance of work, for the
benefit of the land, is not now recognised.   Ryder *v.* Thomas, 13 Hun 297;
King *v.* New York Central Railroad Co., 66 N. Y. 181.

sioned by a nuisance which the owner of real estate suffered upon his premises.[8] Senator HAND also referred to this case, and apparently adopted it, without noticing the limitation put upon it; but it was not necessary for him to notice the limitation, as, in its restricted sense, it was sufficient to justify his opinion, so far as the point to which he applied it was concerned. GARDINER, President, in his dissenting opinion, did not refer to the case of *Bush* v. *Steinman,* nor directly to the principle claimed to be sustained by it, but in a short and clear reference to the rule of *respondeat superior,* did derive propositions which, if truth and reason can prevail, *will reject the authority of that case to the extent [ * 65 claimed for it. Upon the examination of the case of *Bush* v. *Steinman,* it would appear, that the main proposition asserted by it is not law in England, nor in this state, and that the respondent's point and reasoning founded on it, did not obviate the force of the appellants' objection to the refusal of the learned judge to charge as requested.

The judgment appealed from must, therefore, be reversed, and a new trial ordered.

Judgment reversed, and new trial awarded.[9]

---

[8] If a nuisance necessarily occur in the ordinary mode of doing work, the owner is liable; but if it happen by the negligence of the contractor, or his servants, the contractor alone is responsible. Chicago *v.* Robbins, 2 Black 419. And see Harrison *v.* Collins, 86 Penn. St. 153.

[9] In Storrs *v.* Utica, 17 N. Y. 106, it is said by COMSTOCK, C. J., that this opinion contains a very correct exposition of the doctrine of *respondeat superior*; but he much doubted, whether it was applied with strict accuracy, to the facts of the case. The cause of the accident, he says, was not any unskilfulness in the performance of the work, but the result of the work itself, however skilfully performed. And in another case, it is said, that the maxim *respondeat superior* has no application, where the injury results from the very act which the contractor was employed to perform, or is a necessary consequence of the work committed to him. Baxter *v.* Warner, 6 Hun 585.. Where the obstruction or defect caused or created in the street is purely collateral to the work contracted to be done, and is entirely the result

of the wrongful acts of the contractor, or his workman, the rule is, that the employer is not liable; but where the obstruction or defect which occasioned the injury results directly from the acts, which the contractor agreed and was authorized to do, the person who employs the contractor, and authorizes him to do those acts, is equally liable to the injured party. St. Paul Water Co. *v.* Ware, 17 Wall. 276, per CLIFFORD, J., citing Robbins *v.* Chicago, 4 Ibid. 679. And see Butler *v.* Hunter, 7 Hurl. & N. 826; Harrison *v.* Collins, 86 Penn. St. 153. So, it is said to be an exception to the rule, where the work is intrinsically dangerous. Rose *v.* Wray, 31 Leg. Int. 105, per SHARSWOOD, J.