ISAAC SULZBACHER AND ANOTHER *against* PATRICK DICKIE.

(Decided June 26th, 1876.)

Where the defendant was the owner of a store in the city of New York, a part of which was occupied by the plaintiffs as sub-tenants of the defendant's lessees, and the defendant, for the purpose of making necessary repairs to the building, made a contract with a builder, for a specified sum, to put a new roof on the building, but did not, in such contract, bind the builder to use proper means to protect the property of the tenants from the weather while such repairs were being made: *Held*, that the defendant was liable for the negligence of the contractor in leaving the roof without covering, so that during a storm the rain came through and damaged the plaintiff's goods.

The cases in this State, upon the application of rule of *respondeat superior* in like instances, reviewed and examined. Per Chief Justice DALY.

APPEAL by plaintiffs from a judgment of the Marine Court of the city of New York, entered on an order of the general term of that court affirming a judgment of that court entered by direction of a judge thereof, at trial term, dismissing the complaint against the defendant Dickie. The facts are fully stated in the opinion.

*George F. Langbein*, for appellants.

*Edmund Randolph Robinson*, for respondent.

CHARLES P. DALY, Chief Justice.—This action was brought to recover damages for injury to the plaintiff's goods by rain, which came through the roof of a house, 144 Chambers street, owned by the defendant Dickie, and leased by him to the defendants Delamater, Cummings & Windsor, a portion of which premises were leased by them to, and were occupied by, the plaintiff.

The roof of the building leaking, the plaintiff applied to his landlords, Delamater, Cummings & Windsor, to have it repaired, and they applied to Dickie, the owner of the building, who sent a builder to examine the roof, after which examination Dickie instructed the builder to put on a new roof to keep the house from going to ruin, which the builder agreed to do for $280 90, which sum Dickie agreed to pay for the work and the materials.

When the new roof was little more than half tinned, and the tin was off over at least one quarter of the roof in width and breadth, and the tin which was on was in part rolled up, some towards the front, and some towards the side, it rained during the night, and the water came through the parts that were exposed, and damaged a large quantity of goods belonging to the plaintiff, upon two upper lofts occupied by him. On the floor nearest the roof the rain came in through a great many places, and, in the language of the witness, it came through as if there were no roof at all.

Upon this state of facts, the judge, upon the trial, dismissed the complaint as against the defendant Dickie. His decision was affirmed by the general term of the Marine Court, and the plaintiff appeals to this court. The question presented upon the appeal is whether the owner Dickie is responsible to the plaintiff for the injury sustained, he having directed the new roof to be put on, and the injury having arisen from the omission or neglect to have the roof covered in its imperfect state during the night with tar cloth, or some other covering adequate to protect the property of those occupying the building from damage by rain.

In passing upon this question it will be necessary to ascertain, with some care, exactly what has been determined by the

Court of Appeals of this State as to the application of the rule of *respondeat superior*, in cases somewhat analogous to the present.

In *Blake* v. *Ferris* (5 N. Y. 48), the defendants had obtained permission from the corporate authorities of the city of New York to build a sewer in one of the streets of the city, at their own expense, by a written permission, which specified the size of the sewer, the manner of its construction, the materials of which it should be made, and provided that it should be constructed under the direction of the street commissioner, and that the defendants should cause proper guards and lights to be placed at the excavation of the drain, for the prevention of accidents, and that they should be answerable for any damages or injuries which might be occasioned to persons, animals or property, in any manner connected with the building of the sewer.

The street commissioner appointed one Butler, who was a builder, inspector of the work, and who, as such, had charge of the sewer. And Butler made a contract with one Gibbons, to furnish the materials and build the sewer, according to the specifications of the street commissioner, he, Butler, agreeing to pay, or to cause to be paid to Gibbons, certain specified sums for the several kinds of work necessary to complete the sewer. The defendants knew nothing about Gibbons; they only knew Butler in the transaction, and it would appear that all they had to do in respect to the work was to pay for the sewer when constructed. The unfinished sewer being left open and unguarded at night, the plaintiff's horses and carriage were driven into it, without any negligence or fault on the part of the plaintiff or his driver, and were injured. The action was brought to recover from the defendants compensation for the damages sustained.

The defendants' counsel, at the trial, requested the court to charge the jury that " if the defendants did not contract for the work, or if the contractor Gibbons was exercising an independent employment, and the defendants did not interfere with the work, that they were not liable. That, if there was an implied permission by the defendants, which constituted an employment, the express act of the city authorities had a like effect, and made

the city the employer paramount." This the judge refused to
do, and instructed the jury that if they were satisfied from the
evidence that the sewer was undertaken by the defendants, and
for their benefit, and that Butler, in making the contract for
building the sewer, acted as their agent, then the defendants
were responsible, under which instruction the jury found for
the plaintiff.

The Court of Appeals held that the judge, in refusing to
charge as requested, and in giving the charge that he did,
erred ; and upon this ground they granted a new trial. Beyond
this, it is very difficult to ascertain by the perusal of the only ·
opinion delivered, exactly what the court determined in this
case. Judge Comstock, in *Storrs* v. *The City of Utica* (17 N.
Y. 106), regards the case as holding that the contractor Butler,
whose servants were guilty of neglect in leaving the excavation
without a proper inclosure or guards to prevent accidents dur-
ing the night, was liable, and that the defendants were not.
He remarks that the opinion of Judge Mullet contains a correct
exposition of the doctrine of *respondeat superior*, but questions
whether that doctrine was applied with strict accuracy to the
facts in that case. He refers to two subsequent decisions of
the Court of Appeals, in which it was correctly and accurately
applied : *Pack* v. *The Mayor, &c. of N. Y.* (8 N. Y. 222),
where the corporation made a contract with a contractor for
regulating and leveling a road, and where the injury for which
the action was brought against the corporation was occasioned
by the negligent blasting of rocks in the execution of that con-
tract, by a person to whom the first contractor had sublet the
blasting of the rocks ; and *Kelly* v. *The Mayor, &c. of New York*
(11 N. Y. 432), where the corporation contracted with a person
to grade a street, and he employed another person to do the
blasting, by whose negligence a stone was thrown against the
plaintiff's house. In both of these cases the injury arose, not
from any negligence of the person with whom the corporation
made the contract, but through the negligence of a person with
whom he contracted for doing a part of the work.

In the case in which those observations are made by Judge
Comstock (*Storrs* v. *The City of Utica, supra*), the corporation

of Utica made a contract for the excavation of a sewer in one of the streets of the city, with one Shipley, which contained no stipulation for the protection of travelers; and the excavation being left without any guards, barrier, protection or lights, the plaintiff, without any negligence on his part, drove his wagon into the sewer, and was injured. The court held that the corporation were responsible, and that it made no difference whether they had or had not made any stipulation for the security of travelers whilst the excavation was being made; that the obligation and duty was imposed upon them of keeping the public streets in a safe condition for travel, and that they could not, by providing that the works should be executed by contract, throw off the duty imposed upon them, or the responsibility incident to it; that where a corporation have a ditch dug in the public street for the construction of a sewer, although the work may be let out by contract, they still remain charged with the care and control of the street whilst the improvement is being carried on; that if danger to those using the public street arises from the nature of the improvement, and if the danger can be averted only by special precautions, such as placing guards or lighting the streets, the corporation, which has authorized the work, is bound to take these precautions. It was also held in *The City of Buffalo* v. *Holloway* (7 N. Y. 493), that where there was no stipulation with the corporation in the contract on the part of the contractor, who contracted to build a sewer in the street, that he would take all necessary measures to protect travelers from injury by falling into the excavation whilst the sewer was in process of erection, that he was under no obligation to do so; that his obligation extended no farther than to execute his contract according to its terms with reasonable skill, and that he was liable to the corporation only for such injuries as it sustained by the want of the exercise of reasonable skill in the performance of the work; the corporation, and not he, being the party whose duty it was to have the excavation properly guarded for the protection of the public. It does not appear in the report of the case of *Blake* v. *Ferris* whether any stipulation to have the excavation properly guarded and lighted to prevent accidents was con-

tained in the contract which Butler made with the contractor Gibbons, on behalf of the defendants; but it is probable that there was, as the contractor Gibbons agreed to build the sewer in every respect in accordance with the specifications of the street commissioner; and it is stated in the opinion of Judge Mullet, in the Court of Appeals, that while Gibbons and his men were engaged in the execution of the contract, his servants, in his absence, without his knowledge, and in *disregard of his directions*, were guilty of the negligence which was the cause of the injury. Judge Mullet further said that the court below, by refusing to charge as requested, permitted the cause to go to the jury upon the principle that the person who undertakes the erection of a building, or other work for his own benefit, is responsible for injuries to third persons, occasioned by the negligence of the servants of the builder, or the person who is engaged in executing the whole work, under an independent employment, or a general contract for that purpose. This the court held to have been erroneous, from which I infer that Gibbons had contracted not only to build the sewer according to the specifications, but also to have guards and lights at the excavation for the protection of travelers; and that having contracted to do this, the neglect of his workmen or servants to put the proper guards and lights around the excavation, was negligence in the performance of the work; that that negligence on the part of the workmen employed by Gibbons, in not complying with his directions, was the direct and proximate cause of the injury, which made him the party primarily answerable, and not the defendants, whose agents had contracted with him for the building of the sewer. Judge Mullet further remarked that the stipulation entered into between the defendants and the city, to cause proper guards and lights to be placed at the excavation for the prevention of accidents, and to be answerable for all injuries, however beneficial it might be to the city, did not, or could not inure to the benefit of the plaintiff in that action, or strengthen his right to recover against the defendants. From all of which I infer that the Court of Appeals assumed in that case on the facts, that the injury arose from the want of proper care and skill on the part

of the contractor Gibbons, or the men employed by him, in performing what he had expressly contracted to do ; and that consequently he was the party answerable for the injury, and not the defendants.

If *Blake* v. *Ferris* is capable of this construction upon the facts, so far as they are indicated in the report of the case, then it rests substantially upon the same ground or distinction that was recognized and applied in *Pack* v. *The Mayor, &c. of N. Y.* and *Kelly* v. *The Mayor, &c. of N. Y. (supra)*.

I gather as the result of these decisions, that it has been decided in the cases reviewed, that those who have the care of the public streets, and who order a sewer or other public work to be constructed in the streets, must see to it that the public is protected by having proper guards and lights at the excavation made in the street, to prevent accidents ; and that they cannot relieve themselves of this public obligation or duty by letting the work out on contract ; that that duty is not imposed upon the contractor, unless he has expressly stipulated to do it ; and that even where he has, that will not, according to Judge Comstock, relieve a municipal corporation from their obligation to see that it is done ; and that they are answerable to individuals for injuries arising from its omission.   But where the injury is caused by the unskillful or negligent way in which the contractor, or those employed by him, do the work ; or by his omission or neglect to do what he contracted to do ; that then the contractor, and not the corporation, is the one answerable for the injury, as in *Pack* v. *The Mayor, &c., of N. Y.* and *Kelly* v. *The Mayor, &c. (supra)*, and which distinction may be further illustrated by the case of *Conners* v. *Hennessy* (112 Mass. 96), where a house, in being raised up for an addition beneath, fell upon the adjoining house, in which it was held that the contractor, who had contracted to raise the house, was responsible for the injury, and not the owner who had made the contract with him, the party making the contract with the builder having nothing to do, in such cases, with the selection of the workmen, or any right, after the contract is entered into, to direct or control them or the contractor in doing the work.   If the corporation had been sued in *Blake* v. *Ferris*, then the question would

have arisen, whether they were answerable, having exacted a stipulation when they gave permission for the construction of the sewer, that proper guards and lights should be placed at the excavation to prevent accidents.    But the action, in that case, was brought against the persons who were permitted to build the sewer, who were under no public obligation or duty in respect to the street, like the corporation, so that that question remains undetermined.

It now becomes necessary to apply what has been thus decided to the facts of this case.

The defendant Dickie, as the owner of the building, had a right to put on a new roof to prevent his building going to ruin; a landlord having the right, during the tenancy, to enter and make such permanent repairs as are essential to prevent waste, and indispensable to the due protection and preservation of his reversionary interest (Taylor's Landlord and Tenant, 174; *Proude* v. *Hollice*, 1 B. & C. 8).   But as the house was then in the occupation of his tenants and of their sub-tenant, he was bound, in the exercise of this right, to see that all reasonable care and skill was exercised in the removal of the old and in the putting on of the new roof, to prevent injury by the elements to those who were in the occupation of the house.   Having made a contract with a builder to put on a new roof for a specific sum, he should either have provided by that contract, that the builder should do all that was requisite and necessary to protect the inmates whilst the roof was in the process of construction, unless that duty, on the part of the contractor, was implied by the contract, or else taken such measures as were necessary himself.

It does not appear from the evidence that he made any such provision in his contract with the builder, or did anything. The builder simply agreed to put on a new roof for $280 90, and Dickie agreed to pay him that sum for doing so, which is all that appears in the case; so that the injury must be regarded as having arisen from the defendant's neglect to do what was incumbent upon him, unless we can hold that it was the duty of the builder in the due and skillful performance of the contract which he made, to protect the building during the night,

or whenever it became necessary in the course of the work, by covering the roof with tarpaulin cloths, or other ordinary means employed under like circumstances, to guard against the consequences of the occurrence of rain ; and I should be disposed to hold that this was incident to the due performance of such a contract, were it not for the decision before referred to of the Court of Appeals, in *The City of Buffalo* v. *Holloway* (*supra*). It appears to me that where a builder contracts to put a new roof upon an inhabited house, there is implied from the very nature of what he undertakes to do, that he will, in the prosecution of the work, adopt such precautionary measures as may be necessary to prevent injury to the property of those living in the house, from the occurrence of rain. It is scarcely to be expected that the person who makes the contract with him is to have a person constantly attending with the necessary means to cover the roof when there is indication of the approach of rain ; for a sudden shower or a heavy thunderstorm may occur at any time, and so suddenly as to afford scarcely more than time to spread over the roof the necessary protection, and that such person shall go, at the close of the builder's work every day and cover the roof, removing the covering every morning that the builder may proceed with his work. It is true that this may be provided for in the contract, and imposed by its provisions upon the builder, but I apprehend that it would not occur to the great majority of persons employing a builder to put a new roof on an inhabited house, that they would have to incorporate such a provision in the contract or discharge this duty themselves, or if they did not, remain at the hazard of being answerable for any injury that might occur from its omission. In the great multitude of cases, I think, it would be taken for granted that this would be done by the builder as a matter of course ; that it was implied from the very nature of his undertaking, the removal of an old and the putting on of a new roof upon an inhabited house, a process, to some extent, necessarily exposing the occupants to hazard of injury from rain, and that where nothing took place, except an agreement on his part to do this for a certain sum, that such an obligation would be implied, without being expressed, he being constantly on the spot and

knowing when it would be necessary to protect the building against the effects of rain, and that he would naturally cover his work, when quitting it at nightfall, in the due, careful, and I may add skillful execution of his contract. But I feel embarrassed by the decisions of the Court of Appeals in *The City of Buffalo* v. *Holloway*, as this reasoning would apply as forcibly in that case as in this.

Where one contracts to build a sewer in a public street, to do which he must make the necessary excavation in the street; the erecting of barriers around the pitfall, and the putting up of lights at nights for the protection of those using the street involves but a comparatively slight amount of labor and of expense on the part of the contractor, and might well be regarded as incident to his contract. But the Court of Appeals have held otherwise. Holloway had contracted to build a sewer in the street; but there was no provision in his contract that he should place lights and barriers at the excavation for the protection of travelers. A recovery having been had against the city by a person who, without negligence on his part, fell into the excavation, the city, in turn, sued Holloway to recover for the loss and damage to which they had been put by his omission or neglect to have barriers and lights placed at night at the excavation he had made; but the Court of Appeals held that the action could not be maintained, upon the ground that there being no stipulation to that effect in the contract, he was under no obligation to put barriers or lights at the excavation for the protection of the public; that he was answerable only to the corporation for injuries sustained by the want of reasonable skill in the performance of work which he contracted for. If, in that case, he was under no obligation to do anything but to dig the excavation and build the sewer, and might leave the excavation without guards or precautionary measures to prevent injury, then it appears to me that the builder who has simply contracted to put a new roof upon an inhabited house for a certain sum, is equally exempt from the obligation of doing anything more than taking off the old roof and putting on a new one.

It may be that where a contract is made to do a specific

thing for a specific sum, that the contractor makes an exact estimate of the work and materials requisite, and nothing more, to determine for what he will do it, and that to do in addition all that would be necessary in the prosecution of the work, for the protection of the inmates and their property, would involve an additional outlay, and consequently a greater charge than that for which he agrees to do it. There is also great weight in the consideration that the owner who has the new roof put upon his house has it in his power to protect himself by providing in the contract that all that may be requisite for the protection of the inmates and their property shall be done by the builder, so that in the event of the owner being put to any loss or damage, he may have his remedy *over* against the builder on the contract.

In *McCleary* v. *Kent* (3 Duer, 27), the defendants, who had contracted to erect a building, employed a blacksmith at a stipulated price to make and finish a grating in the front area; and the opening for the grating being left open and unguarded, the plaintiff fell through and was injured. The court held that the duty was upon the defendants to have the area properly guarded against accidents during the absence of the blacksmith and his workmen, by covering or fencing the opening of the area until it was properly protected. As the defendant Dickie, in this case, employed the builder to put a new roof on the building at a stipulated price, so the defendants in that case contracted with the blacksmith to make and put down a grating in the area of the building at a specified price, and the party who ordered the work to be done, and not the one who did it, was held to be answerable for the omission to have precautionary measures taken to prevent injury.

In *Chicago City* v. *Robbins* (2 Black Rep. 418) the defendant Robbins made a contract for the construction of an area in the sidewalk in front of his premises. The excavation was left open and unguarded. Robbins made no provision in the contract that the contractor should provide proper guards and lights to prevent accidents; and an injury having happened, it was held that Robbins was answerable for the injury. His liability was put upon the ground that, as the digging of the area on the

sidewalk was for his benefit, the obligation was upon him, and not upon the contractor, to see that it was properly guarded to prevent injury.

The present case, I think, turns upon the question whether the adoption of such measures as were necessary to protect the persons and property of the inmates from damage by rain, was the duty of the builder under the contract which he made or not; for if it were not, it is clear to my mind that the landlord, in the exercise of his right to put a new roof upon his building, was bound to adopt such reasonable and precautionary measures as would protect the persons and property of his tenants and their sub-tenants in the building from damage by the elements from its exposed condition during the prosecution of the work. I feel constrained by the authority above referred to to hold, that as no stipulation to that effect was made by the owner in the contract with the builder, that the builder was under no obligation to do anything more than what he contracted to do; that the obligation was therefore upon the owner alone, and that he was answerable for the injury sustained.

If my colleagues agree in this conclusion, then the court below erred in dismissing the complaint as to Dickie, and judgment should be reversed.

ROBINSON, J.—The defendant Dickie, though under no obligation to repair the roof of the premises he had leased to Delamater, Cummings & Windsor, of whom plaintiff was a sub-tenant, exercised his right as landlord to undertake to make on his own account permanent repairs, and to put a new roof upon the building demised. In the execution of that work, he was bound to exercise all the vigilance and caution which the nature of the undertaking required. As to the occupants of the building, as tenants or sub-tenants, he was bound to use ordinary diligence in protecting them from injury naturally resulting from the character of the work undertaken. It consisted of the removal of an old and damaged roof to the building, and the substitution of a new one. The process in itself was of such a character that it naturally exposed the property of the occupants of the building to damage from the fall of

rain, and the undertaking, from its very nature, exacted every reasonable effort to avoid any injury likely to result from the character of the work so undertaken. The defendant having so undertaken and engaged others to do the work of this character, was responsible not only for his own negligence, but for the negligence of the persons with whom he had contracted for its performance.

Where the act undertaken is one that from its very character is either a nuisance or dangerous to others, the person undertaking it is not released from responsibility to any person thereby injured, although he has entered into a contract with some third person to perform it, and the injury has occurred through the negligence of the latter (*O'Rourke* v. *Hart*, 7 Bosw. 514; *Chicago* v. *Robbins*, 2 Black, 418; 2 Hilliard on Torts, 519 to 543; Shear. & Red. Neg. § 79, &c.).

The case presented in view of the character of the work defendant voluntarily undertook, and the damages resulting from neglect in its performance by Miller his contractor, clearly establishes his responsibility and the error in the judgment appealed from.

I am of the opinion the judgment should be reversed and a new trial ordered, with costs to abide the event·

VAN BRUNT, J., concurred in the result.

Judgment reversed.