MARY D. DEMING, Respondent, *v.* THE TERMINAL RAILWAY OF BUFFALO et al., Appellants, Impleaded with Another.

| 169 | 1 |
|---|---|
| f169 | 581 |
| 169 | 1 |
| 171 | 105 |
| 169 | 1 |
| 75 AD | 4 |

RAILROAD — DUTY AS TO CARRYING ITS TRACKS UNDER PUBLIC HIGHWAY — LIABILITY FOR INJURY FROM OBSTRUCTION CREATED BY INDEPENDENT CONTRACTOR. A railroad company which, by an order of the Supreme Court granted under section 11 of the Railroad Law (L. 1890, ch. 565), has been permitted to carry a public highway over its tracks, is liable for an injury occurring to a traveler on a dark night, resulting from the failure of an independent contractor, to whom the entire work had been let, to properly guard or light an embankment made in the highway in the prosecution of the work, because its liability rests, not upon the negligence of the contractor, for which under the doctrine of *respondeat superior* it would not be responsible, but upon a breach of its duty to the public to keep the highway in a safe condition for travel while the work is in progress.

*Deming* v. *Terminal Railway Co.*, 49 App. Div. 493, affirmed.

(Argued October 30, 1901; decided December 10, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 28, 1900, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William B. Hornblower* and *John Laughlin* for appellants. The trial court erred in charging the jury that the

1

duty devolved upon the Terminal Railway Company of seeing that the works in connection with the building of this crossing were properly guarded, notwithstanding its contract with Smith & Lally to construct the same. (*Berg* v. *Parsons,* 156 N. Y. 109; *Blake* v. *Ferris,* 5 N. Y. 48; *Pack* v. *Mayor, etc.,* 8 N. Y. 222; *Kelly* v. *Mayor, etc.,* 11 N. Y. 432; *McCafferty* v. *S. D. & P. M. R. R. Co,* 61 N. Y. 178; *King* v. *N. Y. C. & H. R. R. R. Co.,* 66 N. Y. 181; *Town of Pierrepont* v. *Loveless,* 72 N. Y. 211; *Vogel* v. *Mayor, etc.,* 92 N. Y. 10; *Ferguson* v. *Hubbell,* 97 N. Y. 507; *Herrington* v. *Vil. of Lansingburgh,* 110 N. Y. 145.) The ruling of the court below, that defendant's right to disturb the highway having been conferred by a statute which imposed upon it the duty of restoring it when the crossing was completed, it was, while such crossing was being constructed, under the same obligations to protect the public in the use of the highway that perpetually devolve upon a city with reference to its streets, was erroneous. (Elliott on Railroads, 1859, § 1063; *Town of Pierrepont* v. *Loveless,* 72 N. Y. 211; *Reedie* v. *N. Ry. Co.,* 4 Exch. 244; *Herrington* v. *Vil. of Lansingburgh,* 110 N. Y. 145; *Vogel* v. *Mayor, etc.,* 92 N. Y. 11; *Vanderpool* v. *Husson,* 28 Barb. 196; *Norton* v. *Wiswall,* 26 Barb. 618; *Engel* v. *Eureka Club,* 137 N. Y. 100; *Sullivan* v. *Dunham,* 161 N. Y. 290; *Cott* v. *L. R. R. Co.,* 36 N. Y. 214.) The court erred in refusing to charge that under the contract between the Terminal Railway and Smith & Lally, which provides that the latter shall furnish necessary accommodations for the passage of the public at the intersections of streets and highways, it was their duty to properly guard this crossing. (*Kipperly* v. *Ramsden,* 83 Ill. 354; *Starbird* v. *Barrons,* 43 N. Y. 200; *Baird* v. *Gillett,* 47 N. Y. 186; *Barnes* v. *Keene,* 132 N. Y. 13.) The court erred in permitting Dr. York to testify in regard to the plaintiff's probable recovery. (*Strohm* v. *N. Y., L. E. & W. R. R. Co.,* 96 N. Y. 305; *Tozer* v. *N. Y. C. & H. R. R. R. Co.,* 105 N. Y. 617; *De Soucey* v. *Manh. Ry. Co.,* 39 N. Y. S. R. 79; *Johnson* v. *Manh. Ry. Co.,* 52 Hun, 113; *Lewis* v. *B. E. R. R.*

*Co.,* 7 Misc. Rep. 286; *Baird* v. *Gillett,* 47 N. Y. 187; *Williams* v. *Fitch,* 18 N. Y. 546.)

*Clarence M. Bushnell* for respondent. The defendant, the Terminal Railway Company, is liable in this case. The necessary and probable consequence of the work contracted for was to create a dangerous condition of the highway, and the work itself was intrinsically dangerous, and was done under authority granted the employer. (*Storrs* v. *City of Utica,* 17 N. Y. 104; *McCafferty* v. *S. D. & P. M. R. R. Co.,* 61 N. Y. 183; *S. O. R. R. Co.* v. *Morey,* 71 Ohio St. 207; *Woodman* v. *M. R. R. Co.,* 149 Mass. 335; *Veazi* v. *P. R. R. Co.,* 49 Maine, 119; *Flynn* v. *N. Y. El. R. R. Co.,* 17 J. & S. 60; *Downey* v. *Low,* 22 App. Div. 461; *Weber* v. *B. Ry. Co.,* 20 App. Div. 292; *Congreve* v. *Smith,* 18 N. Y. 79; *Engel* v. *Eureka Club,* 137 N. Y. 100.) The defendant, the Terminal Railway Company, is liable because of its failure to light or guard the obstruction which it caused to be placed in the street. (*Robbins* v. *Chicago,* 5 Wall. 657; 2 Thomp. on Neg. 901, 902, § 24; *Hawxhurst* v. *Mayor, etc.,* 43 Hun, 588; *Flynn* v. *N. Y. El. R. R. Co.,* 17 J. & S. 60; *Vil. of Port Jervis* v. *F. N. Bank,* 96 N. Y. 550; *Sexton* v. *Zett,* 44 N. Y. 430; *McCamus* v. *C. G. L. Co.,* 40 Barb. 380; *Babbage* v. *Powers,* 130 N. Y. 281; 3 Elliott on Railroads, § 1063; *Johnson* v. *P. B. Co.,* 44 App. Div. 581; *Higgins* v. *B., Q. C. & S. R. R. Co.,* 54 App. Div. 69; *Ramsey* v. *Nat. C. Co.,* 49 App. Div. 11.) The license to the railway company to enter upon the highway, conferred by section 11 of the Railroad Law and by order of the court, imposed upon it the same duties and burdens as are imposed upon municipalities in carrying on works of a similar character in the public streets. (*People* v. *D. & C. R. R. Co.,* 58 N. Y. 152; *Conklin* v. *N. Y., O. & W. Ry. Co.,* 102 N. Y. 112; *Rauenstein* v. *N. Y., L. & W. Ry. Co.,* 136 N. Y. 534; *Brusso* v. *City of Buffalo,* 90 N. Y. 679; *Turner* v. *City of Newburgh,* 109 N. Y. 301; *Pettengill* v. *City of Yonkers,* 116 N. Y. 558; *Scanlon* v. *City of*

*Watertown,* 14 App. Div. 1 ; 3 Elliott on Railroads, § 1063.)
Neither under the Railroad Law nor under the authorities
was the defendant authorized to convert the obstruction placed
by it in the highway into a nuisance. (*People* v. *D. & C. R.
R. Co.,* 58 N. Y. 165 ; *Cogswell* v. *N. Y., N: H. & H. R.
R. Co.,* 103 N. Y. 10 ; *Clifford* v. *Dam,* 81 N. Y. 56 ;
*Trustees F. B. Church* v. *U. & S. R. R. Co.,* 6 Barb. 313 ;
*D., L. & W. R. R. Co.* v. *City of Buffalo,* 158 N. Y. 266 ;
*Mundy* v. *N. Y., L. E. & W. R. R. Co.,* 75 Hun, 479.)
No legal error was committed by the court in the charge.
(*Zimmer* v. *T. A. R. R. Co.,* 36 App. Div. 265.) No error
was committed in the admission of the testimony of Dr. York.
(*Ayres* v. *D., L. & W. R. R. Co.,* 158 N. Y. 254 ; *Griswold*
v. *N. Y. C. & H. R. R. R. Co.,* 115 N. Y. 61 ; *Grimm* v.
*Hamel,* 2 Hilt. 434.)

PARKER, Ch. J.   The Terminal Railway of Buffalo, a cor-
poration duly organized under the laws of this state for the
purpose of constructing a railroad to form a connecting link
between the Lake Shore and Michigan Southern and the New
York Central and Hudson River railroads, was in 1897
engaged in constructing its road from Depew to Blaisdell, to
which end it entered into a contract with the firm of Smith
& Lally by the terms of which that firm was to perform the
entire work of construction in accordance with certain plans
and specifications which were made a part of the contract.
By the order of the Supreme Court made in pursuance of
statute defendant was permitted to construct its road across
the White Corners road, a public highway extending from the
city of Buffalo to the village of Hamburg, a condition imposed
by the order being that it should comply with the statute and
restore the highway to such state as not to impair its useful-
ness.   The plans and specifications required that such high-
way should be lifted eight feet and five inches above its
original grade and that the railroad track should be depressed
about twelve feet below the original grade, the highway then
to be carried across the track by means of an overhead bridge.

About the seventh of September work was begun at this point, and the contractors in the course of their operations removed the earth from the west to the east side of the highway resulting in the formation of an embankment covering a little over one-half of the highway for a distance of about six hundred feet north of the proposed crossing, and it extended up to within fifty or one hundred feet of the temporary track. It was about twelve feet wide on top, the sides sloping gradually and its maximum height was seven feet. When completed it was designed to serve as the roadbed of the northerly approach to the bridge over the tracks. The highway at this point was four rods wide, and the presence of the embankment left a space of about thirty feet in width upon the west side thereof for the passage of teams, but only about twelve or fifteen feet of this space was used by the traveling public.

During the evening of September 16th, 1897, the plaintiff and her husband, in company with some ten or twelve other people, while going from Hamburg to Buffalo in a four-seated drag drawn by four horses, in charge of a competent driver, who was ignorant of the existence of the embankment, struck it with the drag, which immediately tipped over, throwing the plaintiff to the ground, from which she received severe injuries. There were no lights upon or in the vicinity of the embankment to warn passers-by of the interference with, and dangerous condition of the highway, and the night was dark and rainy.

The plaintiff had a recovery which the Appellate Division affirmed and afterward allowed an appeal to this court. Through requests to charge, which were refused, and exceptions taken to the charge as made appellant is enabled to present in this court the question whether it is liable because of the omission to properly guard the embankment on the night in question. Its claim is that having let the contract of constructing the entire road to competent and skillful independent contractors it is not liable for any failure on their part to protect passers-by upon the highway by placing lights upon the embankment and otherwise guarding it.

The first authority cited by it in support of its position is the well-known case of *Blake* v. *Ferris* (5 N. Y. 48) wherein it was held that "where persons having a license or a grant to construct at their own expense a sewer in a public street engage another person to construct it at a stipulated price for the whole. work they are not liable to other persons for any injuries resulting from the negligent manner in which the sewer may be left at night by the workmen employed in its construction." In that case the license or grant given by the city authorities contained a provision "that the grantees should cause proper guards and lights to be placed at the excavation and should be answerable for damages or injuries which might be occasioned to persons, animals or property in the construction of the sewer." But the court after a very able discussion of the doctrine of *respondeat superior*, reached the conclusion that only an immediate employer of the agent or servant who neglected to properly guard the sewer on the night when the injuries occurred was responsible for that negligent act. It must be conceded if that case was properly decided that the defendant is not liable for the failure of the contractors, their agents or servants, in this case to properly guard the embankment for the protection of the passers-by upon the highway during the night in question.

The discussion of the doctrine of *respondeat superior* in that case was an exhaustive one, and, indeed, it may be said to be a leading case upon that subject, for it has been cited with approval many times by the courts of this state, and in this court in the following, among other cases : *Pack* v. *Mayor etc., of N. Y.* (8 N. Y. 222); *Kelly* v. *Mayor etc., of N. Y.* (11 N. Y. 432, 433); *McCafferty* v. *Spuyten Duyvil & P. M. R. R. Co.* (61 N. Y. 178); *Herrington* v. *Village of Lansingburgh* (110 N. Y. 145); *Charlock* v. *Freel* (125 N. Y. 357); *Butler* v. *Townsend* (126 N. Y. 105); *Berg* v. *Parsons* (156 N. Y. 109, 112); *Uppington* v. *City of New York* (165 N. Y. 222, 232).

Reference will be made to all of these cases in detail later, but for the present I pass to the first case in this court which

challenged the correctness of the decision in *Blake* v. *Ferris*
upon the ground that the doctrine of *respondeat superior*
was not applicable to the situation presented in that case,
namely, *Storrs* v. *City of Utica* (17 N. Y. 104).    Judge
COMSTOCK, in writing the opinion in that case, conceded that
the opinion in *Blake* v. *Ferris* contained a correct exposition
of the doctrine of *respondeat superior*, in which view this
court has to this day steadily agreed, but he contended in
effect that the doctrine was not applied with strict accuracy
to the facts in *Blake* v. *Ferris* because the injury did not
result from negligence in the actual performance of the work,
that is, in the manner in which the work was carried on by
the laborers, but that the accident was the result of the work
itself however skillfully performed.    He said : " A ditch can-
not be dug in a public street and left open and unguarded at
night without imminent danger of such casualties.    If they
do occur, who is the author of the mischief?    Is it not he
who causes the ditch to be dug whether he does it with
his own hands, employs laborers or lets it out by contract?
If by contract, then I admit that the contractor must respond
to third persons if his servants or laborers are negligent in the
immediate execution of the work, but the ultimate superior or
proprietor first determines that the excavation shall be made
and then he selects his own contractor.    Can he escape respon-
sibility for putting a public street in a condition dangerous
for travel at night by interposing the contract which he makes
as made for the very thing which creates the danger?    *    *    *
What then is the obligation of a city corporation when it
undertakes to construct a sewer in a public street?    Can it in
that undertaking and in any mode of providing for the execu-
tion of the work throw off the duty in question and the
responsibilities through which that duty is to be enforced?
Although the work may be let out by contract, the corpora-
tion still remains charged with the care and control of the
street in which the improvement is carried on.    The perform-
ance of the work necessarily renders the street unsafe for
night travel.    This is a result which does not at all depend

upon the care or negligence of the laborers employed by the contractor. The danger arises from the very nature of the improvement, and if it can be averted only by special precautions such as placing guards or lighting the street, the corporation which has authorized the work is plainly bound to take these precautions." The reasoning in that case led to the decision, from which only one member of the court dissented, that the city of Utica, because it owed to the public the duty of keeping its streets in a safe condition for travel, was liable to plaintiff for the injuries received owing to the neglect to keep proper lights and guards around an excavation which it had caused to be made by an independent contractor.

In *Brusso* v. *City of Buffalo* (90 N. Y. 679) the plaintiff, while attempting to cross the street in the night time, fell into an unguarded excavation and received injuries for which the jury awarded him damages. One of the defenses was that while the excavation was made under the direction of a department of the city government the performance of the work was let to an independent contractor, and the city denied liability for his failure to properly guard the excavation. This court said, Judge EARL writing: "The city was under an absolute duty to keep its streets in a safe condition for public travel, and was bound to exercise a reasonable diligence and care to accomplish that end, and when it caused the excavation to be made in the street it was bound to see that it was carefully guarded, so as to be reasonably free from danger to travelers upon the street. It is not absolved from its duty and its responsibility because it employed a contractor to make the excavation. This is settled by a long line of decisions in this and several other states." (Citing *Storrs* v. *City of Utica, supra,* and authorities from other jurisdictions.)

*Vogel* v. *Mayor, etc. of N. Y.* (92 N. Y. 10), presents a very different question from that discussed in the case already referred to, for there the injury was occasioned to plaintiff's lands by the accumulation of surface water owing to the excavations in the street, which were made under a contract with the city in 1858, partly performed and abandoned in 1859,

It was not until 1873 that the city employed another person to complete the work, and the city's liability was predicated upon the ground that it permitted this excavation to remain during this long period when it had the power and right to take charge and complete the work, and thus protect the plaintiff's property from injury. In the course of the opinion, *Blake* v. *Ferris* was held not to be in point, and the court referred with approval to the fact that that case was criticized and questioned in the case of *Storrs* v. *City of Utica* in that it correctly expounded but improperly applied the doctrine of *respondeat superior.*

In *Turner* v. *City of Newburgh* (109 N. Y. 301) the city had employed a contractor to do certain work upon a sewer. He had completed his work at that part of the street where the plaintiff fell, owing to a loosened stone which had been undermined by recent rains, leaving it insecure. The city had not yet accepted the work of the contractor, although the street was open at that point for public travel, and on that ground it denied responsibility, and it was held, Judge GRAY writing: " The duty of the city to keep its streets in safe condition for public travel is absolute, and it is bound to exercise a reasonable diligence and care to accomplish that end, and in cases like the present where it has employed a contractor to do work involving excavation on its streets it is not absolved from its duty and responsibility." (Citing *Storrs* v. *City of Utica* and *Brusso* v. *City of Buffalo, supra.*)

In *Pettengill* v. *City of Yonkers* (116 N. Y. 558) the excavation in the street which occasioned the injury to the plaintiff, owing to the fact that it was not properly guarded at night, was made by a board of water commissioners. The court held the board was a department of the city government, and, therefore, that case did not present the question whether the city would have been liable had the work been done by an independent contractor. In the course of the opinion, however, it was stated that " a municipality is not absolved from liability because the injury results from the

negligence of a contractor with the city who by his contract is bound to properly guard an excavation or to place warning lights." (Citing *Turner* v. *City of Newburgh, supra,* and other cases.)

These cases, as we have seen, recognize the principle that inasmuch as a municipality owes to the public generally the duty of keeping the streets in a safe condition for public travel, although it may temporarily interfere with the streets for the public good by constructing sewers therein, laying water mains and making such other excavations from time to time as the public needs require, it still owes the public the duty of protecting them from falling or driving into such excavations, which in some cases can only be performed by constructing barriers across the streets to prevent their use by the public temporarily, and in others may be fully accomplished by properly lighting such excavations in the night time, and otherwise guarding them so as to permit, without danger to the passer-by, the free use of that portion of the street which has not been interfered with. And this obligation it cannot escape by letting the work of excavation to an independent contractor, although it is legally absolved from injuries resulting from the negligent acts of the servants of the contractor in the prosecution of the work.

Attention will now be given to the leading cases in this court, citing *Blake* v. *Ferris,* which are claimed by appellant's counsel to fully sustain that case, and also to be in hostility to the decision in *Storrs* v. *City of Utica.*

*Pack* v. *Mayor, etc. of N. Y.* and *Kelly* v. *Mayor, etc. of N. Y. (supra),* may be considered together, as each presented the same question. In each the municipal corporation had contracted for the grading of a street with an independent contractor, and in each the plaintiff was injured as the result of carelessness of the contractor's employees in blasting. It was held in those cases, as it had been in *Blake* v. *Ferris,* and has since been in every case where the question has been up, that the city was not liable, as the injuries were occasioned by the

neglect of the contractor's employees over whom the city had no control whatever in the performance of the work under-taken by the contractor. Both of these cases were referred to in *Storrs* v. *City of Utica* as correctly applying the "general principles so well set forth in *Blake* v. *Ferris*."

The question presented in *McCafferty* v. *S. D., & P. M. R. R. Co.* (*supra*) did not relate to the public streets at all. The injury complained of was occasioned by the negligent acts of the employees of a contractor who was blasting out rocks so as to throw them upon the lands of another. The railroad company which owned the lands upon which the blasting was being conducted was prosecuted for the injury, and this court held, on the authority of the *Pack, Kelly* and other cases, that the defendant having let out the work of construction to an independent contractor, it was not liable for the negligence of the men employed by him. Judge EARL, in the opinion, referred to the *Storrs* case as expressly approving the *Pack* and *Kelly* cases, and as criticising *Blake* v. *Ferris*, and stated the distinction between the *Storrs* case and the one under review in these words : " In that case the defendant was held liable because it owed a duty to the public to keep the streets in a safe condition for travel and not because it was responsible for any negligent acts of the contractor."

In *Herrington* v. *Village of Lansingburgh* (*supra*) the injuries sustained by the plaintiff were occasioned by the carelessness of the employees of an independent contractor in blasting for the purpose of the construction of a sewer. The question presented, therefore, was precisely the same as in the *Pack* and *Kelly* cases, and the municipality was held not liable upon the authority of those cases.

In *Charlock* v. *Freel* the inquiry was not whether the city was liable, but whether an independent contractor was. The defendant Freel sought to evade liability upon the ground that he was not an independent contractor, but a mere servant of the city. But his contention was not sustained and the judgment against him was affirmed. As that was a case

where the injuries were sustained by falling into a hole in the public streets created under the direction of the defendant, it may well have been that the city was also liable. But that question was not before the court for decision, nor was it discussed.

In *Butler* v. *Townsend* (*supra*) the injuries to the plaintiff were occasioned by the falling of the staging around a vessel upon which the plaintiff stood in order to calk the vessel, and *Blake* v. *Ferris* was cited merely as an authority upon the question involved in that case, whether the relation of employer and employee existed between the defendant and the plaintiff.

Nor did *Berg* v. *Parsons* have to do with the public streets. In that case an owner contracted with another to excavate his lot for building purposes, and the contractor so carelessly conducted the blasting that rocks were thrown upon and injured the property of another, and it was held, citing *Blake* v. *Ferris,* and the *Pack, Kelly* and *McCafferty* cases, that the owner was not responsible for the negligent performance of the work by the contractor.

Nor did *Uppington* v. *City of New York* (*supra*) present the question whether a municipality is bound to see to it that excavations which it authorizes in the public streets are guarded at night for the protection of the traveler. The injury which the plaintiff sustained in that case was not personal, coming to him while upon the public street, but instead was an injury to his lands occasioned by the settling of the ground in front of his premises due to the negligent manner in which the contractor had filled an excavation necessary to the construction of a sewer. As the city had authority by law to construct the sewer by contract, and had fully performed all the obligations resting upon it in that regard, it was held that it was not liable on its part for injury to adjoining lands resulting from the negligence of an independent and concededly competent contractor. In support of that general proposition it cited *Blake* v. *Ferris, Berg* v. *Parsons* and other authorities sustaining it. Many others might have been cited, for the authorities upon that general proposition are in agreement in this court.

I have thus called attention to the principal authorities relied upon by the appellant in support of his contention that *Blake* v. *Ferris* is still the law for every question decided by it, and have pointed out the fact that not one of those cases presents one of the questions decided by the *Blake* case, namely, that a party having authority to make the public streets dangerous for passers-by may be relieved from the burden of guarding the place of danger in the street by letting the work to an independent contractor. On the other hand, it has been observed that so much of the decision in *Blake* v. *Ferris* as so decided was distinctly overruled in the *Storrs* case, the doctrine of which, in that respect, has since been followed in several cases where the question was up for decision. From the time of the decision in the *Storrs* case until now this court has consistently recognized the distinction between the two cases, rightly treating *Blake* v. *Ferris* as the leading case so far as it involves a consideration of the general principles of *respondeat superior*, and the *Storrs* case as establishing that such rule is not applicable to a case where the injury results from a failure on the part of the municipality to properly guard an excavation or obstruction authorized by it in a public street committed to its care.

Now, dominion over the highway was, by the operation of the statute, upon the order of the Supreme Court, for the purpose of carrying the highway over the railroad tracks vested in the defendant railroad company, which having accepted the privileges and benefits conferred upon it by statute, necessarily took with them all the obligations and liabilities in respect to the highway which its absolute dominion over it for the purpose of carrying it across the railroad track made necessary, among which was the duty of so guarding the obstructions to the highway which were made under its direction as to save passers-by from injury.

The judgment should be affirmed, with costs.

Gray, O'Brien, Haight, Landon, Cullen and Werner, JJ., concur.

Judgment affirmed.