HARRY J. LAUT, Respondent, *v.* THE CITY OF ALBANY and THE STANDARD OIL COMPANY OF NEW YORK, Appellants.

Third Department, May 14, 1920.

**Municipal corporations — negligence — action to recover damage caused by automobile skidding on freshly-oiled street — evidence — repair of street after accident — quality of material not raised by pleadings or evidence — submission to jury erroneous — refusal to charge that codefendant was independent contractor erroneous.**

In an action against a city and an oil company to recover for injuries to plaintiff's automobile which was struck by another automobile which skidded against it on a freshly-oiled macadam street, it was error to permit the plaintiff to show that it was not customary to put crushed stone on a freshly-oiled street but that the defendant city after the accident did cover the place in question with crushed stone.

It was error for the court to submit to the jury the question whether the material used to oil the street was proper, as no such negligence was alleged in the complaint and there was no evidence that the material used was improper.

It was error for the court to refuse to charge that the defendant oil company was an independent contractor.

JOHN M. KELLOGG, P. J., dissents, with memorandum.

APPEAL by the defendants, The Standard Oil Company of New York and another, from a judgment of the County Court of Albany county in favor of the plaintiff, entered in the office of the clerk of said county on the 15th day of September, 1919, upon the verdict of a jury for $150, and also from an order entered in said clerk's office on the same day denying defendants' motion for a new trial made upon the minutes.

*Arthur L. Andrews* [*John J. McManus* of counsel], for the appellant, city of Albany.

*Visscher, Whalen & Austin,* for the appellant, the Standard Oil Company.

*Henry J. Crawford,* for the respondent.

KILEY, J.:

On the afternoon of July 30, 1918, the defendant the city of Albany by some previous arrangement had with the defendant the Standard Oil Company placed upon the macadam surface of one of its streets, known as the Southern Boulevard, oil, liquid tar or road material, generally used for that purpose. This boulevard runs approximately north and south; the width is given from fifty to eighty feet; the macadam is eighteen feet wide laid down in the center of the boulevard. It was not lighted. Toward the northern end of this street and the macadam there is a slight curve for some little distance, and the surface slopes from the west toward the east. The oil or substance so put upon the street covered a space of about one hundred feet in length and all of the macadam surface except a strip of about two feet along the eastern edge. The plaintiff, between eight and nine o'clock in the evening of the day the repairing was done, approached this street from the north going south; when he reached the curved and oiled macadam on the westerly side, his proper side to travel upon, his car commenced to slide; he put on the brakes, but that did not stop the car; it continued to skid or slide from the western side to the east until it came to the dry eastern edge or dirt part of the surface. While plaintiff's car was standing where it had stopped, a car coming from the north toward the south slid or skidded

in like manner as plaintiff's car had done, and collided with plaintiff's car, striking it in the rear and causing the damage complained of here. Plaintiff has sued the city and the Standard Oil Company. The negligence complained of is alleged in the complaint as follows: " On information and belief, that on or about July 30, 1918, the defendants negligently and carelessly covered the entire surface of said boulevard with a great and unusual quantity of liquid tar, or road material, to a depth of nearly an inch without covering said tar or material with sand or gravel, and without leaving any space for automobiles to pass over said boulevard without passing over and through the said tar or material, and that the said defendants negligently and carelessly permitted the said material to be and remain on the driveway of said boulevard in the manner aforesaid and in such a way as to make it likely that automobiles would slip and skid, and in such a manner as to make it very dangerous for automobiles to pass over the same." Defendants put in separate answers; there was but one trial; and it was stipulated that objections and exceptions taken by either of the attorneys for the respective parties should apply to both defendants. The verdict rendered was against the defendants jointly. Errors were permitted in the reception of evidence to which objections and exceptions were duly taken; also errors were committed by the court in his charge to the jury, which call for a reversal of the judgment. Superintendent Bender, after testifying that it was not customary to cover the oil with crushed stone, where No. 4 oil was used, was asked by plaintiff's counsel, referring to the next day after the accident: " Did you cover this when you go out there? " Objection and exception was duly taken, overruled, and witness answered that he did so under instructions from his superior. " Q. When you saw it the next day you thought the situation was such you thought it advisable to put crushed stone on top? " Objection and exception were overruled, and witness answered in the affirmative. This presents reversible error. (*Getty* v. *Town of Hamlin,* 127 N. Y. 636, and cases cited; *Iannone* v. *United Engineering & Construction Co.,* 149 App. Div. 367; *Causa* v. *Kenny,* 156 id. 134; *Murphy* v. *McMahon,* 179 id. 837.) There are cases where acts and conditions after the accident

may be shown, as for instance, showing jurisdiction or control; or showing a condition that by its nature must have existed before the accident, illustrated in the case of *Teasdale* v. *Malone Village* (17 App. Div. 185). The court submitted to the jury the question as to whether the material (oil) used was proper; used the expression twice in his charge, stating that plaintiff claimed it was improper. No such negligence is alleged in the complaint, nor any evidence of improper material used appears in the record. On the other hand, it appears that the oil or substance used was that in common use for road purposes. The charge thus made was excepted to and presents error. The question was specifically submitted to the jury on a refusal of a request to charge, thus magnifying its supposed importance. The court charged at the request of the city, appellant, that the relation of master and servant did not exist between the defendants; a request to charge that the defendant the Standard Oil Company was an independent contractor was refused. It was either the servant or an independent contractor. The cases where both parties can be charged have to partake of the nature of a copartnership or joint enterprise, entered into for mutual profit depending on the success of the venture, as illustrated in *Stroher* v. *Elting* (97 N. Y. 102). As the case stood at the time of the request the defendant the Standard Oil Company was an independent contractor; it was error to refuse to so charge. (*Charlock* v. *Freel,* 125 N. Y. 357; *Uppington* v. *City of New York,* 165 id. 222; *Frank* v. *City of Rome* 125 App. Div. 141.) While my associates do not agree with me, I think the question of notice to the appellant city was not properly disposed of. Section 244 of the Second Class Cities Law provides that the city must have actual notice of the defect, or such defect must have existed so long as to charge it with constructive notice. That provision applies to the facts, circumstances and parties involved here. (*MacMullen* v. *City of Middletown,* 187 N. Y. 37.) It is conceded or at least appears that the appellant city of Albany did not have actual notice. Did the defect exist so long as to impute constructive notice to the city? This oil was put upon the street in the afternoon of July thirtieth, and the accident happened between eight and nine o'clock that evening; the first notice defendant

city had was at ten o'clock that evening. This is not sufficient time upon which to hold that defendant had constructive notice. (*Cohen* v. *City of New York*, 204 N. Y. 424; *McKee* v. *City of New York*, 135 App. Div. 829.)

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except JOHN M. KELLOGG, P. J., dissenting, with a memorandum.

JOHN M. KELLOGG, P. J. (dissenting):

The evidence compels the conclusion that the oiling of the Southern Boulevard, where the macadam leaves the asphalt and around the curve, with its sloping surface, made the road dangerous for automobile travel. The accidents happening at the place early in the evening render it unnecessary to discuss that part of the case. The oil was thick and heavy; the current of the testimony tends to show that it was a quarter of an inch or more in depth and that it was impossible to steer an automobile around the curve without its skidding down the incline.

The jury could have found, and evidently did find, that the proper practice is to oil a macadam road with No. 4 or No. 6 oil, the No. 4 being a light oil and the No. 6 much heavier. When the light oil is used the oil company has a machine which, under great pressure, forces it into the macadam, if the surface is not too hard, and it is then unnecessary to top-dress the surface, but where the heavier oil is used, or the macadam is hard, a top-dressing is required. With a light oil the street is oiled for its whole width at once, but with the heavier oil it is found necessary to oil one-half of the width, barricading against it, and, after some time, to oil the other half, moving the barricade to that side.

The city had arranged with the oil company that it was to oil about a quarter of a mile of this macadam. The road was prepared for the work. On account of war conditions the oil company could not furnish No. 4 or No. 6 oil, and it was agreed that "tank bottom" was to be used. It is significant that no witness was produced by either defendant to to tell what "tank bottom" is. The only witness offered

by defendants is the city official who made the contract and had charge of the boulevard, and his testimony is unsatisfactory and unconvincing. In general words, he tells how the oil was applied and speaks of its thickness, and then admits that he knew nothing about it; did not know whether it was put on by machine or how and did not know what " tank bottom " is, never having used it before. Evidently he made no inquiry upon the subject. Expecting the work to begin Monday or Tuesday, he went to the road Monday morning and found that it was not started; he again went Tuesday morning, with a like result, and paid no further attention to it. But sometime Tuesday the oil company, as expected, began the work. It oiled about one hundred feet of the road, in length, for sixteen of the eighteen feet of the macadam in width, and at night the road was left in its unfinished condition, without any barrier or lights until about ten o'clock, after the accident, when the city official sent a man to the road with a lantern to remain during the night to warn automobiles.

It is not entirely clear how the oil was applied or whether the quality of the oil alone caused the dangerous condition. The fact, however, remains that very heavy oil was used and necessarily it was applied too thick. The only witness produced by the city states that the machine can spread about an eighteenth of an inch in thickness, but apparently it can be spread to a much greater depth if desired. Common experience shows that the condition described by the witnesses does not exist where proper oil is used. The oil company knew the condition in which it was leaving the road, and must have known that it was a negligent act, especially as there was no indication of barriers or lights being provided for the public protection. Upon leaving the work for the night, it gave the city no notice of the existing condition. The city was derelict in its duty to the public in providing for putting " tank bottom " on this road without any specifications as to the way and manner in which it was to be done and with no knowledge as to what " tank bottom " is and without doing any act to protect the public. The work was expected to begin Tuesday, and it was a very easy matter to call up the oil company and find just what hour it would

begin the work. The words " tank bottom " probably conveyed to the minds of the jury that it was the settlings in the bottom of the tank, and heavy thick oil, and it naturally would take that view in the absence of any evidence from the parties who knew what it was. " ' The duty of the city to keep its streets in safe condition for public travel is absolute, and it is bound to exercise a reasonable diligence and care to accomplish that end, and in cases like the present where it has employed a contractor to do work involving excavation on its streets it is not absolved from its duty and responsibility.' " (*Deming* v. *Terminal Railway of Buffalo*, 169 N. Y. 1, 9; *Storrs* v. *City of Utica*, 17 id. 104.)

It is urged that it was error to submit to the jury the question whether the oil was a proper material for use. All of the reliable evidence tended to show that it was an improper material to use in the manner in which it was used.

Appellants contend that it was error to permit evidence that the top-dressing was put on the next morning. Concededly, in an action for negligence arising from a failure to repair a structure or a road, it would be improper to show that it was repaired after the accident, as evidence that the road was not in proper condition. In this case the oiling of the road had not been completed at any place, either in length or width, and the oiling made the road dangerous and no barriers or lights were put up to warn the public. The city witness, by giving his loose opinion in general terms, attempted to give the impression that it was not necessary to top-dress this road. As we have seen, his examination showed that he knew nothing about it. The fact that he sent a man to the road with a lantern to warn automobiles was called out by the defendants and not by the plaintiff. It is a fair question on the evidence whether or not it was the plan to put on top-dressing. The defendants' witness swears he was not notified when the work was to be done. He understood the work was to begin Monday or Tuesday; it was not started on Monday; he, therefore, must have believed it was to begin on Tuesday. The mere fact that it was not progressing Tuesday morning, when he was upon the ground, gave him no warrant to believe that it would not be entered upon that day. The want of notice, therefore,

Third Department, May, 1920.          [Vol. 191.

was not very prejudicial when he understood it was to start that day. He concedes that the next morning after the accident he found that the macadam was so hard at the curve and other places that the oil had not penetrated, and the road was slippery. Nevertheless he top-dressed those places and all of the road that was oiled with this material. His evidence as to the condition of the road when he first saw it the morning after the accident confirms the plaintiff's view that the oil remained on the surface of the road, making it very slippery. Clearly that presented a case where top-dressing, according to his theory, was necessary, and the fact that top-dressing was done did not bear any heavier upon the defendants than the fact that the situation actually made top-dressing necessary. His evidence, manner and interest justified the jury in accepting such of his testimony as was against his interest and disregarding such parts as were in his interest. If the city was negligent, it was the result of his action or inaction. It is not probable that, without knowing what "tank bottom" was, he had come to the conclusion that it was not necessary to top-dress it. He says he had no top-dressing on the ground; evidently not. When needed, the top-dressing would be brought from the piles and scattered upon the road. There was no occasion to bring it to the roadside in advance and handle it twice. This evidence as to top-dressing was competent in view of all the circumstances and the fact that the work had not been finished; it bears upon what was the original plan and what was deemed necessary at the time the contract was made and upon the credibility of the witness. If there is any question about it, the facts make it so plain that top-dressing was necessary that the error could not prejudice the defendant. Without this evidence the negligence of both defendants was overwhelming. It is evident that both defendants knew that no oil, especially "tank bottom," would penetrate a hard macadam surface. Before using it, without any provision for top-dressing or guarding the place, it was their duty to examine the surface, and if they had examined it they would have ascertained that the "tank bottom" applied to it would make the road dangerous. It is evident, from the condition of the oil as sworn to by all of the witnesses, that top-dressing

was necessary, and that was probably the understanding of the parties. The witness neglected his duty in permitting the use of this oil and in not protecting the public, and he is the only one who is willing to take the stand and attempt to excuse his acts.

It is urged that it was error to refuse to charge that the company was not an independent contractor. When a company does work upon a public street, which necessarily makes it dangerous to travel over, and leaves it unprotected, knowing that no arrangements have been made to protect the public, it is quite immaterial whether it was a separate contractor or what its relation to the work was. It created the nuisance and is responsible for it.

As we have seen, the negligence of the city caused the dangerous condition of the street. The question of notice, therefore, need not be considered. (*Minton* v. *City of Syracuse,* 172 App. Div. 39.)

The verdict is just; the oil company deemed it for its interest to make no explanation of " tank bottom " or the method of its application, and both defendants are relying upon technicalities to leave upon the plaintiff a burden which they should bear. I favor an affirmance.

Judgment reversed and new trial granted, with costs to the appellants to abide the event.