*Northern District*

No. 5025

CATHERINE GORMLEY, ET AL
v.
MARINUCCI BROS. & CO., INC.

(June 21, 1957)

*Present*:   GADSBY, P. J., BROOKS AND CONNELLY, JJ.

*Connelly, J.*   This is an action of tort in which the plaintiffs, joint owners of certain property, seek to recover against the defendant for damage to said property allegedly caused by the defendant's negligence in the conduct of certain *blasting operations* during the month of June, 1954. The defendant's answer contained a general denial and an allegation of contributory negligence.

*There was evidence which tended to show that the plaintiff,* Catherine Gormley, who was joint owner of the land and buildings at 26 Church Street, Milton, with her mother, the plaintiff Elizabeth Ireland, was in the kitchen of her home on the afternoon of June 17, 1954, when she heard a big explosion and observed several knick-knacks, which were on a shelf in the kitchen, fall to the floor. At the time of the explosion she felt the whole house shake and called the police right away. She noticed cracks in the ceiling which she pointed out that evening to her husband, Frank X. Gormley, when he returned home from work. The ceilings in the kitchen, living room

and dining room were cracked. The plaintiff first moved into the house in May of 1951. The house was a two-family wooden frame dwelling and in good condition prior to the explosion. The next morning, Frank X. Gormley noticed a perpendicular crack in the foundation on the outside of the house which had not been there before. He also inspected the inside of the cellar. There was a very noticeable tilt on the right hand side of the porch which had not been there before. As a result of this inspection Frank X. Gormley had his wife contact a builder to appraise the damage. He came out on July 4, 1954. His name was Benjamin Shapiro, a general contractor, of 20 Brockton Street, Mattapan. Shapiro had been in the contracting business for 20 years and at the time of his inspection of the plaintiff's house, he was building houses and doing maintenance work. He had done a little blasting and on the two or three occasions when he had, he had used sub-contractors to do the blasting. He had observed the effects of blasting in West Roxbury in 1953 and 1954 and had observed a lot of houses damaged by blasting. He testified that he was no expert as far as the technological effects of blasting were concerned and did not know how the force was transmitted through the soil. The soil in West Roxbury was shale; he did not probe or analyze the soil in the vicinity of the plaintiff's house when he inspected it. The distance between the plaintiffs' house and the East Milton underpass was 300 to 350 feet. It was the fourth house from the area where the men were working. Shapiro noticed cracks in the foundation inside and outside and a tilt on the right column on the right side of the porch. He also observed perpendicular cracks in the ceiling. The cracks were similar to those he had observed in West Roxbury during the blasting operations there and which had occurred after blasts in West Roxbury.

The following interrogatories propounded by the plaintiff to the defendant and the defendant's answers thereto were introduced in evidence by the plaintiff:

1. Q  Please state your full name, address, business address and your official position in the defendant company.

   A  Michael J. Verrochi, Century Lane, Milton, Mass. President, 51 Caylon St., Dorchester, Mass.

2. Q  Do you have the authority to bind the defendant by your statements in answer to these interrogatories?

   A  I am authorized to make answers.

3. Q  Did the defendant, its agents or servants, engage in blasting operations in East Milton Square, East Milton, Massachusetts?
      (a)  On the morning of June 14, 1954?
      (b)  In the afternoon of June 14, 1954?
      (c)  On the morning of June 15, 1954?
      (d)  In the afternoon of June 15, 1954?
      (e)  On the morning of June 16, 1954?
      (f)  In the afternoon of June 16, 1954?
      (g)  On the morning of June 17, 1954?
      (h)  In the afternoon of June 17, 1954?
      (i)  On the morning of June 18, 1954?
      (j)  In the afternoon of June 18, 1954?

   A  Blasting operations were conducted on each day set forth, except on the morning of June 17 and the morning of June 18, 1954.

4. Q  If the answer to any part of the preceeding interrogatory is in the affirmative, please state:
      (h)  How many pounds of explosive were set off in the afternoon of June 17, 1954?

   A  (h)  Two charges, one of 115 lbs. and one of 108 lbs.

At the conclusion of the evidence and prior to

argument the defendant filed the following requests for rulings:

1. The evidence does not warrant a finding that the defendant was negligent.

2. The evidence does not warrant a finding that the plaintiff is entitled to recover.

3. The evidence does not warrant a finding other than that there was no direct damage to the plaintiff's property.

4. The evidence does not warrant a finding other than that any damage on the plaintiff's property was not as a result of the negligence of the defendant.

5. The doctrine of Res Ipsa Loquitur does not apply.

6. The evidence does not warrant a finding other than that the damage to the plaintiff's property was not proximately caused by the negligence of the defendant.

The plaintiff also duly filed the following requests:

1. By common law, one carrying on blasting operations is liable for all direct injuries to the persons or property of another, he is liable for consequential harm such as is caused by concussion if he acts negligently in the blasting operations.

2. It is not necessary that there be any direct evidence that the blasting was done negligently if the negligence can be inferred from all the evidence.

3. If a contractor who repairs the cellar wall testifies that he is of the opinion that the damage was due to blasting of fifteen (15) pounds of dynamite at one hundred fifty (150) feet distance and there is testimony introduced by the defendant that this damage could not have been caused by these blasts, the damage is properly submitted to the jury or the trier of fact.

4. The actual construction of the underpass in which blasting is carried on must be performed not merely with reasonable care and skill, but the amount of care must be commensurate with the dangerous nature of the work; great care must be taken and no precaution must be omitted which careful men acquainted with the business ought to exercise in relation to the same.

5. The evidence warrants a finding for the plaintiffs.

6. There is no evidence that warrants a finding for the defendant.

7. On the evidence, the plaintiffs are entitled to recover because:

(a) They have proved that the said house was not in a damaged condition prior to the blasting;

(b) They have proved that blasting did take place immediately prior to the discovery of damage to the said house;

(c) They have proved by an expert builder that the damage to the said house was consistent with damage caused by blasting;

(d) They have proved that had the blasting been done properly it could not have caused any damage to the said house; and

(e) Negligence of the defendant can be inferred even though there is no direct evidence of negligence.

The Court denied the defendant's requests for rulings numbered 1, 2, 3, 4, and 6 while allowing the plaintiff's requests for rulings numbered 1, 2, 5 and 7. The Court in passing on the plaintiff's third request, numbered 3, made the following notation: "No such testimony as to distance — granted a jury question"; the Court, in passing on the plaintiff's request, numbered 4, made the following notation: "Reasonable care under the circumstances required."

The Court found for the plaintiff.

The report contains all the evidence material to the questions reported.

The defendant claims to be aggrieved by the action of the Court in denying its requests numbered 1, 2, 3, 4 and 6 and in allowing the plaintiff's requests numbered 1, 2, 5 and 7 and claims to be further aggrieved by the Court's action on the plaintiff's requests numbered 3 and 4 specifically referred to above.

The law covering blasting operations is clearly

stated in *Jenkins v. Tomasello*, 286 Mass. 180, as follows: "By the common law one carrying on blasting operations is liable for all direct injuries to the person or property of another, but in the absence of negligence is not liable for consequential harm such as is caused by concussion". *Coughlan v. Grande & Son, Inc.*, 332 Mass. 464.

In the case at bar the burden of proof was on the plaintiffs to show that the damage to their property was caused by the negligence of the defendant. *O'Regan v. Verrochi*, 325 Mass. 391; *Dolham v. Peterson*, 297 Mass. 479. From the cases just cited it is also clear that "direct damage" means that the property was damaged directly by stones or other debris being cast upon the premises and "consequential damage" is defined as damage due to concussion or vibrations resulting from the blasting.

As the report contains all the material evidence and there is not one piece of evidence showing "direct damage", it is hard to understand why the trial judge denied defendant's request No. 3. In doing so he erred.

The case before us is one involving "consequential damage" only. The trial judge rightly ruled that the doctrine of "res ipsa loquitur" does not apply here. That being the case negligence "should be established by the evidence directly, or upon clear inferences from the facts. It cannot rest upon a conjecture simply." *Holland House Co. v. Baird*, 169 NY 136. The New York rule on blasting and its consequences is like that in Massachusetts. The trial judge made a general finding for the plaintiffs and to do so it had to be based on negligence of the defendant, but he made no special findings of fact unless they can be inferred from his allowance of Plaintiff's Request No. 7.

The question finally comes down to this. Does the evidence reported and inferences that may clearly be

drawn from it justify the finding that the plaintiffs have sustained the burden of proving that the damage to their property was caused by the negligence of the defendant?

From the evidence it could be found that the house of the plaintiffs was in good condition before the blasting; that the blasting by the defendant on the afternoon of June 17, 1954, was sufficient to knock several knick-knacks on a shelf in the kitchen to the floor; that the whole house shook and that cracks were noticed in the ceilings of the kitchen, living room and dining room; that there was a perpendicular crack in the foundation on the outside of the house, which had not been there before, and that there was a noticeable tilt on the right side of the porch, which had not been there before; that the distance between the plaintiff's house and the East Milton underpass, where the blast occurred, was 300 to 350 feet; that the house involved was the fourth house from the area where the men were working; and that on the afternoon in question two charges of explosive were set off, one of 115 pounds and one of 108 pounds. It could have been found also from the testimony of the witness Shapiro, a general contractor, that the aforementioned consequential damages resulted from the blasting. That does not go far enough. *Langdoc v. The Gevaert Company of America, Inc.*, 315 Mass. 8; *Coughlan v. Grande & Son, Inc.*, 332 Mass. 464; *Dalton v. Demos Bros. General Contractors, Inc.*, 1956 A.S. 887.

It is significant that the witness Shapiro gave no testimony as to any negligence on the part of the defendant, or that the blast was handled in a negligent manner or without taking due precautions, or that the blast was set off too close to the property, or that other houses in the neighborhood were damaged, or that there were any complaints about the previous blastings on the morning and afternoon

of June 15, 16 and 17. Neither is there any explanation of the kind of explosive used nor whether the amount was excessive under the circumstances. The trial judge made no special finding of negligence unless it can be inferred from the allowance of Plaintiff's Request No. 7.

There seems to have been a general assumption in the case that because there was damage there must have been negligence. That is not the law. Negligence is something to be proved. It should not rest on conjecture or the imagination. We feel that the evidence reported, taken in the light most favorable to the plaintiffs, does not sustain the burden of proving negligence on the part of the defendant.

The defendant was not harmed by the way the trial judge handled plaintiffs' requests Nos. 3 and 4. They were denied and are not before us.

Plaintiffs' Request No. 7 was improper as to form and should have been denied, as it was argumentative and called for a mixture of finding of facts and ruling of law.

For the reasons just stated the trial judge erred in allowing plaintiffs' request No. 7, and in denying defendant's requests Nos. 1, 3, 4 and 6.

As there was prejudicial error in the general finding for the plaintiffs and in the allowance of plaintiffs' request No. 7, and in the denial of defendant's requests Nos. 1, 3, 4 and 6, *we order the Finding for the Plaintiffs vacated and a Finding for the Defendant entered.*

Francis X. Carroll, for the Plaintiff.
Badger, Pratt, Doyle & Badger, for the Defendant.